UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GARFIELD-DAN RYAN CURRENCY EXCHANGE, INC.,** ) ) ) | |
| Plaintiff, ) | No. 23 C 5033 |
| ) | |
| v. ) | Judge Rebecca R. Pallmeyer |
| ) | |
| **CITIBANK, N.A.,** ) ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

An innovation in banking practice—electronic or online check depositing—has opened the door to new fraudulent activity: "Duplicate presentment fraud" occurs when the holder of a check deposits the check remotely with one bank via a mobile device, and then deposits the physical check again with a second bank. If the second bank makes funds available to the payee before the check is dishonored by the paying institution, the second bank may suffer a loss. Federal Reserve regulations promulgated in 2017 allow this second bank to seek indemnification from the first bank (the one that accepted the remote deposit), but only if certain conditions are met. *See* 12 C.F.R. § 229.34(f).

Plaintiff Garfield-Dan Ryan Currency Exchange, Inc., a community currency exchange that offers check-cashing services, negotiated cash for an $840 check. But the payee was a double-dipper who had already remote-deposited the check with Defendant Citibank, N.A. Plaintiff deposited the physical check in its account at Republic Bank of Chicago ("Republic"), but the check bounced. Republic debited the $840 from Plaintiff's account, and this suit followed. Plaintiff has sued Citibank under § 229.34(f) to recover the check amount plus costs, claiming it is subrogated to Republic's right of indemnification from Citibank. Defendant has moved to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons outlined below, the motion is granted.

**BACKGROUND**

Plaintiff first sued Defendant in Illinois state court in June 2023. (Verified Compl. [1-1] at 1.) Defendant timely removed the case to federal court under 28 U.S.C. § 1441(a) based on federal-question jurisdiction, and Plaintiff has not contested removal. (Notice of Removal [1].) The court, too, is satisfied that federal-question jurisdiction exists in this case: Plaintiff is invoking a private right of action under the Check Clearing for the 21st Century Act of 2003, 12 U.S.C. §§ 5001–18 (the "Check 21 Act") to enforce a warranty created by subpart C of Regulation CC, which implements the Check 21 Act. *See* 12 U.S.C. § 5010(a); 12 C.F.R. § 229.34(f). Accordingly, Plaintiff's cause of action clearly "aris[es] under" the laws of the United States. 28 U.S.C. § 1331; *see Suggs v. C. W. Transp., Inc.*, 421 F. Supp. 58, 61 (N.D. Ill. 1976) ("[A]n administrative regulation which has the force of law may give rise to federal question jurisdiction . . . [if it] present[s] a significant question respecting the construction, validity, or interpretation of the law").

As alleged in the complaint, Plaintiff is a licensed community currency exchange based in Northbrook, Illinois that provides check-cashing services to customers for a fee. (Verified Compl. ¶ 1.) On or around April 8, 2023, Plaintiff accepted a check for $840 made out to Dyonnesha Woolfolk from the Illinois State Treasurer, and paid Woolfolk $840 in cash in exchange for the check. (*Id.* ¶ 4, Ex. A.) The check did not include a restrictive indorsement limiting it to "mobile deposit only" or any similar language. (*Id.* ¶ 13.) Plaintiff "took permanent custody of the original check, truncated it[1] and immediately thereafter deposited same into its bank account at . . . Republic." (*Id.* ¶ 5.) Around five days later, Republic notified Plaintiff that the check had been dishonored for having already been paid. (*Id.* ¶ 6.) The Federal Reserve subtracted the amount of the check from Republic's account; Republic, in turn, debited this amount from Plaintiff's

---

[1] As set forth in further detail below, "truncation" refers to the process of "remov[ing] an original paper check from the check collection or return process" in lieu of an electronic (or substitute paper) copy sent to a recipient. *See* 12 U.S.C. § 5002(18).

account pursuant to their contractual agreement, which requires Plaintiff to indemnify Republic for any losses incurred as a result of dishonored checks. (*Id.* ¶¶ 7–8.)

Plaintiff alleges upon information and belief that Woolfolk "utilized a mobile device to send an electronic check to [Defendant Citibank], via remote deposit capture, then negotiated the original check to Plaintiff for a second encashment." (*Id.* ¶ 9.) Republic sent notice of the duplicate presentment to Citibank (after having already debited Plaintiff's account) and requested payment under 12 C.F.R. § 229.34(f)—presumably in a belated attempt to seek reimbursement for its customer (Plaintiff), though the complaint does not make this clear. (*Id.* ¶ 15.) Citibank did not remit payment, however, so in late April 2023, Plaintiff's general counsel reached out to Citibank, claiming that Plaintiff was subrogated to Republic's right to recover the loss under § 229.34(f), plus expenses under § 229.34(i). (*Id.* ¶¶ 15, 16, Ex. B.) Again, Citibank did not respond. (*Id.* ¶ 17.) In this lawsuit, Plaintiff seeks to recover the check's original amount of $840, plus "costs, interest, attorneys' fees and expenses as permitted under 12 C.F.R. 229.34(i) . . . ." (*Id.* at p. 5.)

Defendant moved to dismiss in September 2023 [14] (hereinafter "Mot."). After the motion was fully briefed, Judge LaShonda Hunt of this district granted Citibank's motion to dismiss in a nearly identical duplicate presentment fraud case filed by a different currency exchange: *63rd & Morgan Currency Exch., Inc. v. Citibank, N.A.*, No. 23 C 5048, 2024 WL 245189 (N.D. Ill. Jan. 23, 2024). The court granted Citibank's motion to consider this case as supplemental authority [24, 25].

## LEGAL STANDARD

Defendant has moved to dismiss Plaintiff's complaint under Rule 12(b)(6), arguing that Plaintiff lacks standing under the regulation to pursue this claim.[2] FED. R. CIV. P. 12(b)(6). In

---

[2] Defendant frames this issue as one of subject-matter jurisdiction, and cites caselaw dealing with the plaintiff's burden, as the party invoking the court's jurisdiction, to establish standing. (*See* Mot. at 4–5 (citing *United States v. Hays*, 515 U.S. 737, 743 (1995), and *Retired Chi. Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). Such a standing challenge would properly be brought under Rule 12(b)(1), not 12(b)(6). But Plaintiff has suffered a cognizable "injury in fact"—its loss of the $840—for purposes of constitutional standing. *Hays*,

3

ruling on such a motion, the court must "construe [the plaintiff's] complaint in the light most favorable to them, accepting their factual allegations as true and drawing all reasonable inferences in their favor." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 569 (7th Cir. 2023). However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## DISCUSSION

The dispute in this case is nearly identical to the one adjudicated in *63rd & Morgan*—both cases share the same counsel, and the briefing in that case matches the briefing in this one almost verbatim. (*See* [13, 15, 17] in No. 23 C 5048.) While Judge Hunt's opinion is not binding, the court finds its reasoning persuasive and largely reaches the same conclusion: the regulatory regime here does not contemplate relief for an entity like Plaintiff.

The regulation in question is § 229.34(f) of Regulation CC, promulgated by the Federal Reserve Board of Governors (the "Board") to implement the Check 21 Act. Before the Check 21 Act, banks needed to both receive physical checks from their customers and send the same physical checks out to other banks for payment. The Check 21 Act streamlines these traditional checking practices by allowing original paper checks to be converted into electronic and substitute paper form, a process known as "check truncation." *See Speedy Check Cashers, Inc. v. U.S. Postal Serv.*, 286 F. Supp. 3d 934, 937 (N.D. Ill. 2017). Either the bank or their customer may "truncate" a check by making this conversion; in either case, the bank that truncates the original check, or is the first bank to transfer, present or return a substitute version of this check that has

---

515 U.S. at 742–43. Defendant's argument is better understood as a question of whether Plaintiff has a right of action under (or alternatively, is within the "zone of interests" protected by) the statute and regulations that it seeks to enforce. *See Circle City Broad. I, LLC v. AT&T Servs., Inc.*, No. 23-1787, 2024 WL 1634093, at *4 (7th Cir. Apr. 16, 2024) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014)). That question does not implicate the court's subject-matter jurisdiction and is properly addressed on a Rule 12(b)(6) motion. *Id.*; *Cnty. of Cook v. Wells Fargo & Co*, 115 F. Supp. 3d 909, 911 (N.D. Ill. 2015).

already been truncated, is deemed the "truncating bank" under the law. *See* 12 C.F.R. § 229.2(eee). The Act, as implemented by Regulation CC, establishes a number of warranties and indemnities that safeguard financial institutions from risks created by check truncation. Included among the regulatory protections is § 229.34(f), which was added to Regulation CC in 2017 to address situations in which customers inadvertently or fraudulently use banks' "remote deposit capture" services to deposit the same check more than once.[3] *See Availability of Funds and Collection of Checks: Final Rule*, 82 Fed. Reg. 27,552, 27,582 (June 15, 2017). In these situations, the second bank that accepts the check for deposit may suffer a loss if the institution responsible for paying the check has already paid out (or "settled") its value to the first bank. Broadly, § 229.34(f) creates a remedy to shift such losses onto the bank that created the risk of loss by allowing its customers to deposit checks via remote deposit capture. The provision's full text reads as follows:

> (f) Remote deposit capture indemnity.
>
> > (1) The indemnity described in paragraph (f)(2) of this section is provided by a depositary bank that—
> >
> > > (i) Is a truncating bank under § 229.2(eee)(2) because it accepts deposit of an electronic image or other electronic information related to an original check;
> > >
> > > (ii) Does not receive the original check;
> > >
> > > (iii) Receives settlement or other consideration for an electronic check or substitute check related to the original check; and
> > >
> > > (iv) Does not receive a return of the check unpaid.
> >
> > (2) A bank described in paragraph (f)(1) of this section shall indemnify, as set forth in § 229.34(i), a depositary bank that accepts the original check

---

[3] Other sections of Regulation CC create warranties related to "substitute checks," which are "paper reproduction[s] of an original check . . . that [are] suitable for automated processing in the same manner as an original check." 12 U.S.C. § 5002(16); *see* 12 C.F.R. §§ 229.2(aaa), 229.52. Defendant makes several arguments in its motion to dismiss for why it is not liable to Plaintiff for breach of warranty under § 229.52 (either directly or by assignment), but Plaintiff counters that these points are irrelevant and nonresponsive since it does not claim that Defendant created a "substitute check" or assert rights under § 229.52. Accordingly, the court disregards these arguments as moot.

> for deposit for losses incurred by that depositary bank if the loss is due to the check having already been paid.
>
> (3) A depositary bank may not make an indemnity claim under paragraph (f)(2) of this section if the original check it accepted for deposit bore a restrictive indorsement inconsistent with the means of deposit.

12 C.F.R. § 229.34(f).

Section 229.34(f) contemplates a fact pattern involving four parties: the "drawer" (i.e., the party paying the check), the payee (the party to whom the check is made), the "truncating bank" (a bank that accepts a "truncated" electronic version of the check that its customer has created via remote deposit capture), and a second bank that subsequently accepts the original paper check for deposit. The Federal Reserve's official commentary on § 229.34(f) notes that in such situations, "[t]he depositary bank that accepts the original [physical] check . . . may make funds available to the customer before it learns that the check is being returned unpaid and, in some cases, may be unable to recover the funds from its customer." 12 C.F.R. pt. 229, app'x E, § XX(G)(1). In such circumstances, § 229.34(f) allows the depositary bank that is holding the physical check to seek indemnification from the "truncating bank" that offered the remote-deposit service, thus creating the possibility of duplicate presentment. As the Board noted in its rulemaking on § 229.34(f), this allocation of risk is based on the assumption that "the bank that accepts a check via remote deposit capture is in the best position to address the actions of its own customer and to guard against the subsequent deposit of the paper check." 82 Fed. Reg. at 27,568.

This case presents a variation on that fact pattern. Not just four, but in this case, five parties are involved: in addition to the drawer, payee, truncating bank, and subsequent depositary bank, there is a *fifth* party: a check casher (or alternatively, "money services business") that serves as an intermediary between the payee and the second depositary bank. In Illinois, such businesses are licensed as "community currency exchanges" by the state's Department of Financial and Professional Services. *See* 205 ILCS 405/0.1–.30; *Currency Exchange and Money*

6

*Transmitters*, Ill. Dep't of Fin. & Pro. Servs., https://idfpr.illinois.gov/dfi/ced/ced-main.html (last visited May 7, 2024). Check-cashing services offer their customers immediate cash in hand for their checks (rather than waiting for them to clear at a bank), in exchange for an added fee. *See Services: Check Cashing*, Cmty. Currency Exch. Ass'n of Ill., https://mycurrencyexchange.com/services/check-cashing (last visited May 7, 2024). Only after the cash has already been paid out does the check-cashing business deposit the check into its own bank account for payment. This business model means that a check casher will find it inherently difficult to claw back funds from its customers, who do not necessarily maintain regular accounts and may be difficult to track down. Check cashers thus face similar risks from duplicate presentment fraud to those faced by the second depositary bank in the Board's commentary—but, as explained below, this does not automatically mean they are covered by the protections of the regulation.

The parties do not dispute that Citibank meets the definition of a "truncating bank." Plaintiff alleges that Defendant Citibank accepted an "electronic image" of the check rather than the original, which was honored and paid by the drawer. (Verified Compl. ¶¶ 6, 9, 11.) The key issue, rather, is whether Plaintiff can claim paragraph (f)(2)'s indemnity for a "depositary bank that accepts the original check" and incurs a loss because the check has already been paid. 12 C.F.R. § 229.34(f)(2). Plaintiff's attempt to invoke this indemnity runs into an immediate problem: the regulation's plain text only discusses "banks," not check cashers. "The same basic rules that apply to statutory interpretation apply to regulatory interpretation." *Bria Health Servs., LLC v. Eagleson*, 950 F.3d 378, 382 (7th Cir. 2020). Under these rules, the court "ask[s] first whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute at the case," based on the regulation's text, purpose and context, and relevant precedents or authorities. *Id*. at 383 (citation and internal quotation marks omitted); *see Kisor v. Wilkie*, 588 U.S. 558, 575, 139 S. Ct. 2400, 2415 (2019). The regulation at issue here, § 229.34(f), provides indemnification only for "depositary bank[s]"—a term defined in Regulation CC as "the first bank to which a check is transferred" for deposit, whether physically or electronically. 12 C.F.R.

§ 229.2(o). "Bank," in turn, is defined in the regulation to include both an enumerated list of types of banks defined in other provisions of the U.S. Code, and "for purposes of subparts C and D of this part . . . any person engaged in the business of banking . . . ." 12 C.F.R. § 229(e)(7). § 229.34(f) falls within subpart C. A currency exchange offers check-cashing services to members of the public, but neither party suggests Plaintiff qualifies as a bank.[4] Rather, on these facts, it is Republic—not Plaintiff—that would fall into the position of the second depositary bank under § 229.34(f). Plaintiff acknowledges this point. (Verified Compl. ¶ 12.) Accordingly, Defendant argues that Plaintiff lacks standing under the regulation to pursue this lawsuit.

Plaintiff counters, however, that it became subrogated to Republic's claim against Citibank under § 229.34(f) by paying it in full. Subrogation is "[t]he substitution of one person in the place of another with reference to a lawful claim . . . so that he who is substituted succeeds to the rights of the other in relation to the . . . claim, and its rights, remedies, or securities." *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 471–72 (7th Cir. 2000) (citation and internal quotation marks omitted). A party may claim subrogation based on either an express contract, a statute, or by operation of law. *Wilder Corp. of Delaware v. Thompson Drainage & Levee Dist.*, 658 F.3d 802, 807 (7th Cir. 2011). In the insurance context, an insurer who has paid the entire claim of its insured becomes subrogated to the insured's right of recovery and may assert this right in its own name as the "real party in interest." *Hanover Ins. Co. v. Brandt Constr. Co.*, No. 4:11-CV-4050-SLD-JAG, 2011 WL 6648232, at *2 (C.D. Ill. Dec. 21, 2011) (citing *Krueger v. Cartwright*, 996 F.2d 928, 931–32 (7th Cir. 1993)).

---

[4] The Board's commentary to Regulation CC's definition of "bank" states that the phrase "any other person engaged in the business of banking" is "intended to cover entities that handle checks for collection and payment"—but its list of examples, including "Edge and agreement corporations, commercial lending companies under 12 U.S.C. 3101, certain industrial banks, and private bankers," does not include check cashers. 12 C.F.R. pt. 229, app'x E, § II(F)(2). The court will not make this leap itself in light of the broader statutory and regulatory context, which consistently defines entities like Plaintiff that only offer check-cashing and other financial services as distinct from traditional "banks" that also accept funds for deposit. *See, e.g.*, 31 C.F.R. § 1010.100(ff)(2), (8) (defining "money services business" to include "check casher[s]" but not "bank[s] or foreign bank[s]").

Plaintiff pleads no facts that would suggest it has a contractual right of subrogation under its banking agreement with Republic.[5] Nor does it argue that the statute or regulation provides an explicit right of subrogation. Rather, Plaintiff appears to argue that it is entitled to legal (or "equitable") subrogation. (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss Compl. [17] (hereinafter "Resp.") at 11 (citing *Dix Mut. Ins. Co. v. LaFramboise*, 149 Ill. 2d 314, 319, 597 N.E.2d 622, 624 (1992)).) This principle allows a party to "step into the shoes of, or be substituted for, the one whose claim or debt he has paid" if doing so is necessary to avoid an inequitable result. *Dix*, 149 Ill. 2d at 319, 597 N.E.2d at 624 (equitable subrogation "rests on the principle that substantial justice should be attained by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall"). The Seventh Circuit has described equitable subrogation as a "troublesomely vague" doctrine. *Wilder*, 658 F.3d at 807. At minimum, it requires that (1) the defendant must be primarily liable to the subrogor, that the subrogee must (2) be compelled to (3) pay this liability in full, and that (4) the subrogee must assert the same right that the subrogor could have asserted. *Am. Nat. Bank & Tr. Co. of Chicago v. Weyerhaeuser Co.*, 692 F.2d 455, 461–63 (7th Cir. 1982).

Thus, to evaluate whether Plaintiff has plausibly alleged a claim for relief based on § 229.34(f), the court must determine whether its subrogation theory has merit. To do so requires assessing, first, whether Citibank was ever primarily liable to Republic to begin with, and second, if Citibank is liable, whether Plaintiff can validly step into Republic's shoes to pursue this claim.

---

[5] The complaint only alleges that Plaintiff and Republic have a "contractual agreement . . . [that] requires Plaintiff to indemnify Republic for losses resulting from checks deposited into its account which are then dishonored." (Verified Compl. ¶ 8.) Nor does Plaintiff attach a copy of this agreement as an exhibit. These allegations do not plausibly state a claim for contractual subrogation. *See Elec. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 346 F. Supp. 2d 958, 963 (N.D. Ill. 2004) (contractual subrogation exists where the contract "clearly and unambiguously states that [subrogee] has a right to recover 'all or part of any payment' ").

I.  **Republic's Right of Indemnity Against Citibank**

Based on the pleadings, the court does not believe that Republic ever had a valid indemnification claim against Citibank that could have been passed along to Plaintiff. The text of the regulation provides for indemnification where the second depositary bank has "accept[ed] the original check for deposit," after the first depositary bank (or "truncating bank") has "accept[ed] deposit of an electronic image of the check or other electronic information related to an original check." 12 C.F.R. § 229.34(f)(1), (2). Regulation CC draws a distinction between "original check[s]" and "truncated checks"; the former refers to "the first paper check issued with respect to a particular payment transaction," *id.* § 229.2(ww), while the latter refers to a check that has been "remove[d] . . . from the forward collection or return process" and replaced with a paper or electronic copy, *id.* § 229.2(ddd). One of the Board's illustrative examples provided in the commentary to § 229.34(f) describes a situation involving three banks (Banks A, B, and C), in which a payee remote-deposits a check at Bank A, then remote-deposits the same check at Bank B, and finally deposits the original paper check at Bank C. 12 C.F.R. pt. 229, app'x E, § XX(G)(2)(c). In this situation, the commentary states that "Depositary Bank B does not have an indemnity claim against Depositary Bank A because Depositary Bank B did not receive the original check for deposit. Depositary Bank C, however, would be able to bring an indemnity claim against Depositary Bank A." *Id.*

Here, Plaintiff's complaint suggests that Republic never received the original paper check—only a truncated copy. Paragraph 5 states that Plaintiff "took *permanent custody* of the original check, *truncated* it and immediately thereafter deposited same into its bank account at Republic Bank of Chicago." (Verified Compl. ¶ 5 (emphasis added).) This puts Republic in the same position as Bank B, not Bank C, in the Board's example described above. Taking a step back, if the goal of the regulation is to protect banks who accept original paper checks for deposit from the risks of duplicate presentment, it would make little sense to allow Republic to claim indemnification for a check that it itself accepted via remote deposit or some other form of

10

substitution authorized under Check 21. *See 63rd & Morgan*, 2024 WL 245189, at *5. Because it does not appear that Defendant was ever primarily liable to Republic under § 229.34(f), there is no claim to which Plaintiff can be subrogated.

Neither of Plaintiff's arguments to the contrary are persuasive. First, Plaintiff attempts to split up the text of § 229.34(f)(2), reasoning that Republic's acceptance of the check "for deposit" is sufficient to support a claim brought by Republic against Citibank. This reading effectively reads out the defined term "original check" from the provision. *See* 12 C.F.R. § 229.34(f)(2) (defining the indemnified party as "a depositary bank that *accepted the original check for deposit*") (emphasis added). Next, Plaintiff contends that "the actions of a nonbank [may be] imputed to a depositary bank" by drawing an analogy to the regulation's treatment of "truncation." (Resp. at 9.) Plaintiff notes that a bank may be designated as a "truncating bank" even if its customer is the one to actually "truncate" a check by removing it from the forward collection process. In the same way, Plaintiff argues, Republic should be treated as a depositary bank that "accepted the original check" since its customer (that is, Plaintiff) "accepted" this check from the payee. *See* 12 C.F.R. § 229.2(eee). But as the *63rd & Morgan* court found, "the word 'accept' connotes something more than simply depositing a check from any payee." 2024 WL 245189, at *5. It implies that *the bank's customer* must give the *original check* to the bank for deposit. That is not what happened here: based on the language of the complaint, Plaintiff accepted the "original check" from the payee, and gave Republic a truncated copy of this check.

On its own, this would not necessarily be a sufficient basis for dismissal. All inferences must be drawn in Plaintiff's favor at the pleading stage, *Russell*, 82 F.4th at 569, and a single use of the word "truncated" may not be sufficient to conclude that Plaintiff in fact deposited the check remotely rather than physically. (At a minimum, Plaintiff would be permitted to amend its complaint with this point clarified.) If the facts were different—if Plaintiff had in fact given the "original check" (i.e., the paper check) to Republic for deposit, and Republic credited this amount

11

to Plaintiff's account—then it is possible that Republic might have accrued a valid right of indemnity against Citibank under § 229.34(f) when the check bounced.

II.     Garfield-Dan Ryan's Subrogation Claim

Even assuming *arguendo* that Republic did possess such a right, however, Plaintiff's allegations do not support the conclusion that Plaintiff is subrogated to this right. Subrogation is a common-law principle that "most commonly arises in relation to insurance policies." *Subrogation*, Black's Law Dictionary (11th ed. 2019); *see Dix*, 149 Ill. 2d at 319, 597 N.E.2d at 624. Some state court rulings have extended the doctrine beyond the insurance context "to include every instance in which one person, not a mere volunteer, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter," *Am. Nat'l Bank & Tr. Co.*, 692 F.2d at 460 (citing *Bost v. Paulson's Enters., Inc.*, 36 Ill. App. 3d 135, 139, 343 N.E.2d 168, 171–72 (2d Dist. 1976)); *see* 34 Ill. Law & Prac. *Subrogation* § 5, Westlaw (database updated Jan. 2024) (citing cases). But Plaintiff cites no authority to suggest that a right of indemnity created by federal regulation may be transferred from one party to another based solely on this equitable doctrine.

Indeed, the text of the regulatory provision at issue here appears logically incompatible with subrogation. § 229.34(f)(2) requires a "depositary bank" to have suffered a "loss . . . [from] the check having already been paid" as a precondition for seeking relief. Subrogation, by definition, requires any loss by the original party-in-interest to have been "paid in full" by the subrogee. *Cf. James River Ins. Co. v. Canal Ins. Co.*, 534 F. Supp. 3d 962, 969–70 (N.D. Ill. 2021) (assessing requirements for subrogation under Illinois law) (citation omitted). In this case, Republic has not suffered a "loss"; it was made whole again by charging the funds back from Plaintiff's account.

Plaintiff nevertheless contends that Republic, as a depositary bank, retains a claim that Plaintiff may pursue as subrogee. Plaintiff urges that it does not matter whether the depositary bank *ultimately* suffers a loss—it must only have suffered a loss *at some point*. In other words,

12

the fact that Republic was out $840 (however briefly) created a right of indemnification under § 229.34(f), and when this $840 was taken back out of Plaintiff's account, that right was not extinguished but instead transferred to Plaintiff. But nothing in the text of § 229.34(f) contemplates this kind of risk reallocation—as already stated, the regulation exclusively refers to indemnification between "banks," and the word "subrogation" appears nowhere. Significantly, other provisions of Regulation CC do explicitly provide for subrogation of indemnity rights, such as those arising from "substitute check" warranties under § 229.52. *See* 12 C.F.R. § 229.53(c) (stating that a bank that indemnifies a later recipient of a substitute check for losses arising from that check "shall be subrogated to the rights of the person that it indemnifies . . . and may attempt to recover from another person based on a warranty or other claim"); *see also* 12 C.F.R. pt. 229, app'x E, § XXV(C)(2) (noting, in commentary to § 229.39(b) concerning claims against closed or insolvent banks, that "if the bank with a claim under this paragraph recovers from a prior bank or other party to the check, the prior bank or other party to the check is subrogated to the claim"). The absence of similar language in § 229.34(f) and its commentary is telling. *Cf. Ambassador Animal Hosp., Ltd. v. Elanco Animal Health Inc.*, 74 F.4th 829, 831 (7th Cir. 2023) (noting, in statutory-interpretation context, that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Similarly, other provisions of Regulation CC that allow for recovery by nonbank parties specifically list these types of parties. *See, e.g.*, 12 C.F.R. § 229.53(a)(1) (extending "substitute check" right of indemnity to "any subsequent recipient (including a collecting or returning bank, the depositary bank, the drawer, the drawee, the payee, the depositor, and any indorser)" who suffers a loss from a substitute check). Adopting Plaintiff's reading would essentially expand the specific term "depositary bank" in § 229.34(f) to impliedly read "depositary bank *(or any party that fully pays the loss sustained by said bank)*." The court is unwilling to make this textual leap.

13

The *63rd & Morgan* court reached the same conclusion. It reasoned that the business model of check cashing "necessarily involves a higher risk of nonpayment with little to no recourse for entities like Plaintiff," and that "interpreting the statutory provision as broadly as Plaintiff suggests would produce absurd results and frustrate the purpose of the Check 21 Act." *63rd & Morgan*, 2024 WL 245189, at *5. This court departs slightly from this reasoning: while it is certainly plausible that neither the Check 21 Act's drafters nor Regulation CC's contemplated protections for check-cashing services, this is at bottom a policy question beyond the court's purview. Plaintiff urges the opposite position: that Regulation CC evinces a clear policy in "favor [of] the allocation and recovery of losses between banks and financial institutions" (Resp. at 10), and that the regulation's purpose of shifting risks created by remote deposit services onto the banks that offer these services should apply with equal force to losses suffered by banks and nonbanks alike. But if this is the case, it is not apparent from the plain language of the regulatory provision at issue. The only hint of the Board's expressed intent with respect to § 229.34(f) is that it should protect *banks* from risks arising from remote deposit capture. *See* 82 Fed. Reg. at 27,568; 12 C.F.R. pt. 229, app'x E, § XX(G)(1). Whether check cashers should also fall within that reallocation of risk is a matter that will need to be addressed (if at all) in future rulemaking.

This is not to say that Plaintiff is without recourse. It could seek compensation from the fraudulent payee, or potentially from the check's drawer under a UCC holder-in-due-course theory. *See Speedy Check Cashers*, 286 F. Supp. 3d at 937–38 (finding that such a claim is not preempted by the Check 21 Act). To offset future risk going forward, it could perhaps withhold payment briefly pending an investigation of a check's history, or else raise the fees it charges for immediate check-cashing. But in the absence of regulatory action to the contrary, check cashers like Plaintiff have no legally cognizable remedy under § 229.34(f) for losses arising from remote deposit capture fraud.

## **CONCLUSION**

Because Plaintiff is not within the class of entities contemplated by § 229.34(f)'s right of indemnity and shows no clear basis for why this right may be subrogated, its suit against Defendant fails to state a claim upon which relief may be granted. Defendants' motion to dismiss [14] is granted and the complaint is dismissed without prejudice. The court is uncertain that there is any basis for a claim here but will allow Plaintiff leave to file an amended complaint, if any, within 21 days.

ENTER:

Dated: May 8, 2024

_____
REBECCA R. PALLMEYER
United States District Judge